**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

STEPHEN NIVENS,

    Plaintiff,

    v.

    Civil Action No.:  ELH-23-2298

TEHUM CARE SERVICES, INC.,
SECRETARY OF DEPT. OF PUBLIC
  SAFETY & CORRECTIONAL SERVICES,
BALTIMORE CO. DET. CENTER,
YESCARE,

    Defendants.

**MEMORANDUM**

Plaintiff Stephen Nivens, a self-represented State prisoner, filed suit on August 21, 2023 (ECF 1), with exhibits, naming the following defendants:  Tehum Care Services, Inc.; the Secretary of the Maryland Department of Public Safety and Correctional services ("DPSCS"); and the Baltimore County Detention Center ("BCDC").  In particular, pursuant to 42 U.S.C. § 1983, Nivens alleged, *inter alia*, violations of the Eighth and Fourteenth Amendments based on claims of deliberate indifference, negligence, and discrimination in regard to certain health care matters. He has also filed a motion for leave to proceed in forma pauperis.  ECF 2.

Soon after suit was filed, I issued a Memorandum and Order directing Nivens to file an Amended Complaint.  ECF 4; ECF 5.  Plaintiff filed the Amended Complaint on September 22, 2023 (ECF 6) and included many exhibits.

The Amended Complaint adds numerous defendants:  Unnamed Infection Control LPN; Director of Nursing Services Adaora N. Odenze; Director of Inmate Health Care Administration Joseph A. Ezeit; Chief Medical Director Sharon L. Baucom, M.D.; Jennifer Mellott, RN; Assistant Director of Nursing Becky Barnhart, RN; Baltimore County Detention Center Correctional Dietary

Officer Lt. Blevins; Warden J. Phillip Morgan; Warden Richard Dovey; Warden William Bohrer; YesCare; and BCDC Director O'Neil.  ECF 6.[1]

Generally, plaintiff repeats the claims he asserted in his original Complaint, to the effect that his constitutional rights were violated because he did not receive a TB reactive test and the poor nutritional value of food served at BCDC caused him to develop hypothyroidism.  ECF 6 at 7-13.  Nivens claims, *inter alia*, that defendants YesCare; Unnamed LPN; Mellott; Barnhart; Odenze; Ezeit; Dr. Baucom; Warden Morgan; Warden Dovey; and Warden Bohrer violated his rights when he was not provided a TB test and because he has not received one since August 24, 2020.  *Id.* at 7.  Further, plaintiff states that a new protocol was put into place and, according to Barnhart, it requires screening questionnaires to be provided in lieu of providing TB reactive tests to everyone.  *Id.* at 9.  He also claims he was asked to withdraw an administrative remedy procedure complaint ("ARP") in order to receive a TB reactive test, which he declined to do and, as a result, he did not receive the test.  *Id.* at 8.  Nivens adds that it is discriminatory to deny the test to him while providing it to correctional and administrative staff.  *Id.* at 10.

In addition, Nivens contends that DPSCS, Lt. Blevins, and O'Neil caused him to become ill with hypothyroidism because the food provided to inmates is of poor nutritional quality.  ECF 6 at 11-13.  In connection with this claim, Nivens describes events taking place from 2011 through 2014.  *Id.*  He observes that hypothyroidism can be treated with Goji berries, avocados, wild caught fish, spiralina and flax seeds, but DPSCS and BCDC do not serve them.  *Id.* at 12.  Further, he claims that DPSCS and BCDC provide officers and administrative staff access to fresh fruit, whole grains, broccoli, cauliflower, mushrooms, tomatoes, onions, cucumbers, proper seasonings, and

---

[1] The Clerk will be directed to add these defendants to the docket.

hot food served in the officer's dining room while declining to offer such food to the inmate population. *Id.* And, he states that on January 11, 2014, lab results showed that he had "elevated unremarkable TSH thyroid level." *Id.* at 13.

## Discussion

### A.

Under 42 U.S.C. § 1983, a plaintiff may file suit against any person who, acting under the color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See, e.g.*, *Nieves v. Bartlett*, ___ U.S. ___, 139 S. Ct. 1715, 1721 (2019); *Filarsky v. Delia*, 566 U.S. 377 (2012); *Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, 575 U.S. 983 (2015). However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017). In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

To state a claim under § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Davison v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019); *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159–60

(4th Cir. 1997).  "The first step in any such claim is to pinpoint the specific right that has been infringed." *Safar*, 859 F.3d at 245.

The phrase "under color of state law" is an element that "'is synonymous with the more familiar state-action requirement' for Fourteenth Amendment claims, 'and the analysis for each is identical.'"  *Davison*, 912 F.3d at 679 (quoting *Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982).  A person acts under color of state law "only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"  *Polk Cnty. v. Dodson*, 454 U.S. 312, 317–18 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326, (1941)); *see also Philips*, 572 F.3d at 181 (citations and internal quotation marks omitted) ("[P]rivate activity will generally not be deemed state action unless the state has so dominated such activity as to convert it to state action: Mere approval of or acquiescence in the initiatives of a private party is insufficient.").

Of relevance here, an individual cannot be held liable in a § 1983 action under a theory of respondeat superior.  *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009).  The Supreme Court has explained, *id.*: "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *See also Younger v. Crowder*, 79 F.4th 373, 381 n.12 (4th Cir. 2023); *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

Thus, § 1983 requires a showing of personal fault based upon a defendant's own conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official

acted personally to deprive the plaintiff of his rights); *see also Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018) (same); *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (same).  If a plaintiff has not alleged any personal connection between a defendant and a denial of constitutional rights, the claim against that defendant must fail.  *Vinnedge*, 550 F.2d at 928.

To be sure, a supervisor may be liable "for the failings of a subordinate under certain narrow circumstances."  *Green v. Beck*, 539 F. App'x 78, 80 (4th Cir. 2013); *see Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (recognizing that there is no respondeat superior liability under § 1983).  However, liability of supervisory officials "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'"  *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)); *see Campbell v. Florian*, 972 F.3d 385, 398 (4th Cir. 2020).

Thus, supervisory liability under § 1983 must be predicated on facts that, if proven, would establish that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.  *See Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014); *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

To qualify as "pervasive," a plaintiff must demonstrate that the challenged conduct "is widespread, or at least has been used on several different occasions."  *Shaw*, 13 F.3d at 799. Therefore, it is insufficient to point "to a single incident or isolated incidents, for a supervisor

5

cannot be expected to promulgate rules and procedures covering every conceivable occurrence . . . . Nor can he reasonably be expected to guard against the deliberate [unlawful] acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." *Id.* (quoting *Slakan*, 737 F.2d at 373) (alteration added in *Slakan*).

However, a supervisor's "continued inaction in the face of documented widespread abuses . . . provides an independent basis" for § 1983 liability against that official for his deliberate indifference or acquiescence to "the constitutionally offensive conduct of his subordinates." *Slakan*, 737 F.2d at 373; *see Shaw*, 13 F.3d at 799; *see also Younger*, 79 F.4th at 384 n.16. But, "a supervisor's mere knowledge" that his subordinates have engaged in unconstitutional conduct is insufficient to give rise to liability; instead, a supervisor is only liable for "his or her own misconduct." *Iqbal*, 556 U.S. at 677.

Therefore, "to state a claim for supervisory liability, 'a plaintiff must plead that *each* [supervisory] defendant, through the official's *own individual actions,* has violated the Constitution.'" *Evans v. Chalmers*, 703 F.3d 636, 660–61 (4th Cir. 2012) (Wilkinson, J., concurring) (emphasis and alteration in *Evans*) (quoting *Iqbal*, 556 U.S. at 676). If a plaintiff makes "bare assertions" that amount to "nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim," the claim is insufficient. *Iqbal*, 556 U.S. at 681 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007)); *see Langford v. Joyner*, 64 F.4th 122, 125-26 (4th Cir. 2023).

Of relevance here, "not all undesirable behavior by state actors is unconstitutional." *Pink v. Lester*, 52 F.3d 73, 75 (1995) (citing *Paul v. Davis*, 424 U.S. 693, 701 (1976)). A constitutional violation requires more than mere negligence. *See Johnson v. Quinones*, 145 F.3d 164, 166 (4th Cir. 1998). Indeed, "the Constitution is designed to deal with deprivations of rights, not errors in

judgment, even though such errors may have unfortunate consequences." *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999), *cert. denied*, 529 U.S. 1067 (2000).

## B.

The Amended Complaint contains no allegations against the "former wardens" or the Secretary of the DPSCS. Nivens appears to base his claims against these parties solely on their job status as wardens and as the Secretary of DPSCS. As discussed, the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane*, 355 F.3d at 782. Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard*, 268 F.3d at 235 (quoting *Slakan*, 737 F.2d at 372).

Because there are no allegations suggesting any of the former wardens or the Secretary were indifferent, through their actions or inactions, to the alleged misconduct, I shall dismiss the Amended Complaint as to Warden J. Phillip Morgan, Warden Richard Dovey, Warden William Bohrer, and the Secretary of DPSCS.

## C.

Nivens claims that DPSCS, BCDC Correctional Dietary Officer Lt. Blevins, and BCDC former director O'Neil caused him to become ill with hypothyroidism because the food provided to inmates is of such poor nutritional quality. ECF 6 at 11-13. In connection with this claim, Nivens describes events taking place from 2011 through 2014. *Id.* He states that on January 11, 2014, lab results showed that he had "elevated unremarkable TSH thyroid level." *Id.* at 13.

"Section 1983 provides a federal cause of action, but in several respects relevant here, federal law looks to the law of the State in which the cause of action arose. This is so for the length

7

of the statute of limitations: it is that which the State provides for personal-injury torts." *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (citing *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)).   In Maryland, the applicable statute of limitations is three years from the date of the claim accrued, which often corresponds to when the occurrence took place.   *See* Md. Code, Cts. & Jud. Proc. Code § 5-101.

The claims against Blevins and O'Neil are clearly time-barred.   At this stage, courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses,'" such as the statute of limitations   *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted); *see Bing v. Brio Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020).   But, under 28 U.S.C. § 1951, courts are required to screen a plaintiff's complaint when, as here, in forma pauperis status is requested.   It is clear, "'*on the face of the complaint,*'" that the suit is time barred as to the claim concerning the provision of food from 2011 to 2014 that allegedly was of poor quality.   *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc) (citation omitted) (emphasis added in *Goodman*); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009).

Nivens's claims against Blevins and O'Neil, regarding food provided to him nine to twelve years ago, must be dismissed as untimely.

**D.**

To the extent that plaintiff asserts a claim against BCDC, it must be dismissed because the facility is not a "person" within the meaning of 42 U.S.C. § 1983.

As noted, § 1983 states:   "Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person with the jurisdiction thereof to the deprivation of any

rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured . . ." (emphasis supplied).

A number of courts have held that inanimate objects such as buildings, facilities, and grounds do not act under color of state law and are not subject to suit under § 1983. *See Smith v. Montgomery Cty. Corr. Facility*, PWG-13-3177, 2014 WL 4094963, at *3 (D. Md. Aug. 18, 2014) (holding that Montgomery County Correctional Facility "is an inanimate object that cannot act under color of state law and therefore is not a 'person' subject to suit under Section 1983"); *Preval v. Reno*, 57 F.Supp.2d 307, 310 (E.D. Va. 1999) (stating that "the Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under 42 U.S.C. § 1983"); *Brooks v. Pembroke City Jail*, 722 F.Supp. 1294, 1301 (E.D. N.C. 1989) (noting that "[c]laims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit").

Conduct amenable to suit under 42 U.S.C. § 1983 must be conduct undertaken by a person. BCDC is not a "person."

### E.

The Eleventh Amendment to the Constitution states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." *See Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting states may not be sued by private individuals in federal court."). In my view, the claim against DPSCS is barred by the Eleventh Amendment.

The Supreme Court has explained: "Although by its terms the [Eleventh] Amendment applies only to suits against a State by citizens of another State, our cases have extended the

Amendment's applicability to suit for damages by citizens against their own States." *Garrett*, 531 U.S. at 363 (collecting cases); *see Allen v. Cooper*, ___ U.S. ___, 140 S. Ct. 994, 1000 (2020); *see, e.g.*, *Va. Office for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011); *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002); *Kimmel v. Fla. Bd. of Regents*, 528 U.S. 62, 72–73 (2000); *Passaro v. Virginia*, 935 F.3d 243, 247 (4th Cir. 2019), *cert. denied*, __ U.S.__, 140 S. Ct. 903 (2020); *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 248 (4th Cir. 2012). In *Pense v. Md. Dep't of Pub. Safety & Corr. Servs.*, 926 F.3d 97, 100 (4th Cir. 2019), the Court said: "The Supreme Court 'has drawn on principles of sovereign immunity to construe the Amendment to establish that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State.'" (quoting *Port Auth. Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990)).

"A foundational premise of the federal system is that States, as sovereigns, are immune from suits for damages, save as they elect to waive that defense." *Coleman v. Court of Appeals of Md.*, 566 U.S. 30, 35 (2012); *see Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54–55 (1996) ("For over a century we have reaffirmed that federal jurisdiction over suits against unconsenting States was not contemplated by the Constitution when establishing the judicial power of the United States.") (internal quotation marks and citation omitted); *see also Quern v. Jordan*, 440 U.S. 332, 345 (1979) ("[Section] 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States[.]"); *Allen v. Cooper*, 895 F.3d 337, 347 (4th Cir. 2018), *aff'd*, ___ U.S. ___, 140 S. Ct. 994 (2020).

The preeminent purpose of State sovereign immunity is to "accord states the dignity that is consistent with their status as sovereign entities." *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 760 (2002). The Fourth Circuit has reiterated that the defense of sovereign immunity

is a jurisdictional bar, explaining that "'sovereign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction.'"  *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) (citation omitted), *cert. denied*, ___ U.S. ___, 139 S. Ct. 417 (2018); *see also Cunningham v. Lester*, 990 F.3d 361, 365 (4th Cir. 2021) (recognizing sovereign immunity as a jurisdictional limitation and describing it as "a weighty principle, foundational to our constitutional system").  Thus, in the absence of waiver or a valid congressional abrogation of sovereign immunity, the states enjoy immunity from suits for damages brought in federal court by their own citizens.  *See Hans v. Louisiana*, 134 U.S. 1, 3 (1890).

Immunity under the Eleventh Amendment bars suit not only against a state, but also against an instrumentality of a state, such as a state agency, sometimes referred to as an "arm of the state."  *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."); *see also Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *Pense*, 926 F.3d at 100; *McCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2015); *Bland v. Roberts*, 730 F.3d 368, 389 (4th Cir. 2013); *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 479 (4th Cir. 2005).  Put another way, immunity applies when "'the governmental entity is so connected to the State that the legal action against the entity would . . . amount to the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties.'"  *Lane v. Anderson*, 660 F. App'x 185, 195–96 (4th Cir. 2016) (quoting *Cash v. Granville Cnty. Bd. of Educ.*, 242 F.3d 219, 224 (4th Cir. 2001)) (cleaned up).

To be sure, "[t]he Eleventh Amendment bar to suit is not absolute." *Feeney*, 495 U.S. at 304. The Fourth Circuit outlined exceptions to Eleventh Amendment immunity in *Lee-Thomas*, 666 F.3d 244 at 249 (internal quotations omitted), stating:

> First, Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) . . . . Second, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) . . . . Third, a State remains free to waive its Eleventh Amendment immunity from suit in a federal court. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002).

In addition, "[a] State remains free to waive its Eleventh Amendment immunity from suit in federal court." *Lapides*, 535 U.S. at 618. A State may do so by statute. *Pense*, 926 F.3d at 100 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985), *superseded on other grounds, as recognized in Lane v. Pena*, 518 U.S. 187, 198 (1996)); *see Lapides*, 535 U.S. at 618; *Lee-Thomas*, 666 F.3d at 249. But, the test to determine whether a state has waived its immunity from suit in federal court is a "stringent" one. *Atascadero State Hosp.*, 473 U.S. at 240; *see Pense*, 926 F.3d at 101.

The State of Maryland has waived its sovereign immunity for certain types of cases brought in its own courts. *See* Md. Code, State Gov't § 12-202(a). But, it has not waived its immunity under the Eleventh Amendment to a suit of this kind in federal court. "A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Halderman*, 465 U.S. at 100 (emphasis in original). Thus, the claims against DPSCS, an arm of the State, must be dismissed.

## F.

Before the remaining claims may move forward, a verified account statement from the finance officer at Maryland Correctional Training Center, where Nivens is incarcerated, must be

obtained.  The affidavit in support of Nivens's motion to proceed in forma pauperis fails to conform with the requirements of 28 U.S.C. § 1915(a)(2), the relevant portion of which provides:

> A prisoner seeking to bring a civil action . . . without prepayment of fees or security therefore, in addition to filing the [requisite] affidavit . . . shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint . . . obtained from the appropriate official of each prison at which the prisoner is or was confined.

Thus, Nivens must obtain from each of the prisons where he was incarcerated over the past six months an inmate account information sheet showing the deposits to his account and monthly balances maintained therein.

In order to assist Nivens in providing this information to the Court, the Finance Officer at Maryland Correctional Training Center ("MCTC") shall be directed to file a certificate which indicates (1) the average monthly balance in the account for the six-month period immediately preceding the filing of this Complaint and (2) the average monthly deposits to the account during that time.  A separate order follows.


November 13, 2023                          /s/_____
Date                                       Ellen L. Hollander
                                           United States District Judge

13