# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

STEPHEN NIVENS,

    Plaintiff,

    v.

TEHUM CARE SERVICES, INC., *et al.*,

    Defendants.

Civil Action No.:  ELH-23-2298

## MEMORANDUM OPINION

    The self-represented plaintiff, Stephen Nivens, is a Maryland prisoner confined at Maryland Correctional Training Center ("MCTC").  He filed a civil rights suit against multiple defendants, pursuant to 42 U.S.C. § 1983.  ECF 1.[1]

    The Court directed Nivens to file an Amended Complaint.  ECF 5.  He complied by filing an "Amended Complaint Order" (ECF 6, "Amended Complaint"), along with twenty-one exhibits, including his medical records and information concerning his administrative grievance.  ECF 6.  It serves as the operative Complaint.  In the Amended Complaint, Nivens alleges that he has received constitutionally inadequate medical care, in violation of his rights under the Eighth Amendment, and that the denial of medical care is discriminatory and reflects deliberate indifference, because he is being exposed to a "possible TB infection . . . ."  *Id.* at 3.

---

[1] Several defendants were previously dismissed from the case.  *See* ECF 9, ECF 10 (dismissing defendants Baltimore County Detention Center; the Secretary of the Department of Public Safety and Correctional Services ("DPSCS"); DPSCS; Warden J. Phillip Morgan; Warden Richard Dovey; Warden William Bohrer; Lt. Blevins; and BCDC Director O'Neil).  Nivens appealed the dismissal of these defendants to the United States Court of Appeals for the Fourth Circuit.  ECF 12.  The appeal was subsequently dismissed by the Fourth Circuit.  ECF 21.

Defendants Sharon Baucom, M.D.; Adaora Odunze; and Joseph Ezeh[2] (collectively, "State Defendants") moved to dismiss the Complaint (ECF 36), supported by a memorandum (ECF 36-1) (collectively, the "Motion") and several exhibits. *See* ECF 36-2 through ECF 36-7. Nivens opposes the Motion. ECF 42.[3] The State Defendants replied (ECF 47), and Nivens again responded. ECF 48.

Defendants YesCare Corp., Jennifer Conway, and Rebecca Barnhart ("YesCare Defendants") answered the Complaint on March 14, 2024. ECF 27. By Order of April 23, 2024 (ECF 46), I directed the YesCare Defendants either to file a motion for summary judgment or, alternatively, a status report regarding the need for discovery to resolve the issues pending before the court. The YesCare Defendants failed to timely comply with my Order, and thus Nivens filed a motion which I construed as a motion for entry of default against the YesCare Defendants. ECF 50, ECF 51. The Clerk entered a default as to the YesCare Defendants on July 26, 2024. *See* ECF 53, ECF 54, ECF 55, ECF 56.

On August 22, 2024, the YesCare Defendants moved to vacate the entry of default. ECF 62 ("Motion to Vacate"). Plaintiff did not respond. The YesCare Defendants also moved to strike (ECF 58, "Motion to Strike") a "Line" filed by Nivens (ECF 57). Plaintiff did not respond. And, the YesCare Defendants have moved to depose Nivens. ECF 64 ("Motion to Depose"). Again, plaintiff did not respond.

---

[2] The Clerk will be directed to update the docket to reflect the full and correct names of all defendants.

[3] Nivens was informed by the Court, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), of his right to respond to the Motion, and that his failure to respond could result in dismissal of the Complaint. ECF 40.

Then, on September 6, 2024, Nivens filed a Motion titled "Motion to Grant and Award Plaintiff's § 1983 Civil Complaint and Dismiss Defendants Claims in Regards to YesCare Corp., Jennifer Conway (Nee Mellott), Rebecca Barnhart, Joseph A Ezeit, Adaora N. Odenze and Sharon Baucom Due to the Warden's and Defendants' Waived, Timebarred, Untimely and Late Filings." ECF 65 ("Motion to Grant").  The defense did not respond.

Upon review of the record, exhibits, and the applicable law, the court deems a hearing unnecessary as to all the motions.  *See* Local Rule 105.6. (D. Md. 2023).  For reasons that follow, I shall grant the Motion because Nivens failed to exhaust his administrative remedies.  I shall also grant the Motion to Vacate and the Motion to Depose plaintiff.  But, I shall deny the Motion to Strike.  In addition, I shall deny plaintiff's Motion to Grant, as moot.  However, I will appoint counsel for plaintiff to assist him with the case, including as to discovery.[4]

## I.      Background

### A. Complaint Allegations

Several defendants have been dismissed from the case, and the claims against the YesCare Defendants shall proceed to discovery.  Therefore, I shall summarize only those allegations pertinent to the State Defendants: Sharon Baucom, Adaora Odunze, and Joseph Ezeh.

Broadly, Nivens alleges that he is "continuously being denied constitutionally adequate medical care while being housed at MCTC."  ECF 6 at 3.  Specifically, Nivens claims that he has utilized the prison sick call slip process to request a "Tuberculosis ('TB') test or TB screening" but states that his "concerns have yet to be adequately addressed for the last three (3) years."  *Id.*  He asserts that he has not been administered the "required TB testing with

---

[4] If plaintiff objects to the appointment of counsel, he must advise me within twenty-one days of the date of docketing of the attached Order.

3

inoculating and injecting Nivens, from 2010, 2012-2019, 2021, and 2022, to adequately ensure Nivens has not been INFECTED with the TB virus." *Id.* at 7 (emphasis in original).

According to Nivens, another inmate, James Simmons, with whom Nivens works, contracted TB on some unspecified date, and thus Nivens has been "EXPOSED" to "A POSSIBLE TB INFECTION." *Id.* at 8 (emphasis in original). Therefore, Nivens argues that this "deliberate indifference and discrimination is exposing Nivens to a serious possible TB infection…" *Id.* at 3. As a result, he states that he has suffered "humiliation, embarrassment, and mental distress resulting from the deprivation of his constitutional rights." *Id.* at 16. Further, he states that the State Defendants "were motivated by evil intent" and that their actions "were taken in reckless or callous indifference and intentional disregard of Nivens' federally protected rights." *Id.*

With respect to plaintiff's efforts to exhaust his claim, Nivens states that he was contacted on August 7, 2023, for what he assumed would be an actual TB inoculation. *Id.* at 9; *see also* ECF 36-7 at 4. No immunization was administered, however. ECF 6 at 9. Therefore, on August 8, 2023, Nivens submitted an Administrative Remedy Procedure ("ARP") to the officer on his housing tier. *Id.* He signed the ARP on August 7, 2023. ECF 36-7 at 4. The Warden received the ARP on August 10, 2023, according to a stamp on the ARP. *See id.* On August 22, 2023, the Warden dismissed Nivens's ARP, but Nivens did not receive the decision until August 29, 2023. ECF 6 at 8; ECF 6-2. Nivens states that his ARP was only dismissed because he declined two attempts to inoculate him on August 14 and 16, 2023, which Nivens notes is "after [he] filed his ARP complaint." ECF 6 at 8.

Nivens includes a variety of exhibits with his suit. *See* ECF 6-1 through ECF 6-22. The Court has reviewed the submissions and found the following relevant to disposition of the

Motion. Exhibit 2 (ECF 6-2) is a copy of plaintiff's "Receipt of Warden/Managing Officials ARP Response." With respect to ARP MCTC-0393-23, Nivens received the Warden's response on August 29, 2023. *Id.* Notably, his original Complaint is dated August 14, 2023, and was docketed on August 21, 2023. *See* ECF 1 at 15; Docket.

As relief, Nivens seeks a declaratory judgment "declaring that defendants have violated Nivens' constitutional rights." ECF 6 at 18. Further, he seeks "Sixteen Million Dollars" from each defendant in compensatory damages and "One Hundred Sixty Million dollars ($160,000,000.00) in punitive damages" from each defendant and "any further relief deemed fair, just, and needed." *Id.* at 19.

## B. State Defendants' Motion

The State Defendants assert that their "employment with DPSCS is administrative in nature." ECF 36-1 at 4. To that end, they present the Declarations of Defendants Sharon Baucom and Adaora Odunze. ECF 36-3, ECF 36-4. Baucom asserts that she was the Chief Medical Officer ("CMO") of the Department of Public Safety and Correctional Services ("DPSCS") from June 2001 until she retired in 2022. ECF 36-3, ¶ 1. In her role as CMO, she "did not provide direct patient care." *Id.* ¶ 2. Instead, her "responsibility was to monitor the private medical contractors' adherence to the contracted services." *Id.* She attests that she "did not have supervisory authority over the private medical contractor's staff" (*id.* ¶ 3) and she did not "interfere with, hinder, or delay medical treatment to any incarcerated person." *Id.* ¶ 4.

Defendant Odunze attests that she has served as the "Director of Nursing for the Incarcerated Individuals Health" since 2014. ECF 36-4, ¶ 1. It is an administrative role within DPSCS. *Id.* ¶ 2. In that role, Odunze does not provide any nursing care to incarcerated individuals (*id.*), nor does she have any supervisory authority over the private medical

contractor's staff.  *Id.* ¶ 3.  She also avers she has not "interfered with, hindered, or delayed medical treatment or care to any incarcerated individual."  *Id.* ¶ 4.

The State Defendants have also submitted a copy of the DPSCS Infection Control Manual.  ECF 36-5.[5]  According to the Manual, incarcerated persons undergo a Tuberculosis test during their initial intake into any DPSCS facility.  *Id.* at 4. Thereafter, incarcerated persons are provided with annual Tuberculosis screenings, using a risk assessment questionnaire.  *Id.* However, an incarcerated person is only provided with a TB test if he or she answers "yes" to any question on the screening tool.  *Id.*  Therefore, while Tuberculosis screenings are given annually, Tuberculosis tests are not given on an annual basis. *Id.*  According to medical records provided by the State Defendants, Nivens was given an "Annual TB Symptom Screening and Risk Assessment" on August 27, 2023.  ECF 37.[6]  The record reflects that Nivens circled "No" as to all questions on the form, which cover symptoms, risk factors, and prior TB history.  *Id.* at 2.

Finally, the State Defendants submitted Nivens's ARP related to this matter.  ECF 36-7.  It is dated August 7, 2023; it was submitted to a correctional officer on August 8, 2023; and the Warden received it on August 10, 2023.  *Id.*[7]  There, Nivens complains that he was denied adequate medical care because he was not provided with an annual Tuberculosis test on August 7, 2023, and that the denial of the test was discriminatory.  *Id.*  As in his Amended Complaint, Nivens states in his ARP that he "has not been administered a TB test … since his TB consult on Thursday,

---

[5] Ruthie McCauley, the Litigation Coordinator at MCTC, attests to the authenticity of the record.  *See* ECF 36-5 at 1.

[6] Tracie Knight, the Custodian of Records at MCTC, attests to the authenticity of the record. *See* ECF 37 at 1.

[7] Ruthie McCauley, the Litigation Coordinator at MCTC, attests to the authenticity of the record.  *See* ECF 36-7 at 1.

August 20, 2020, and an actual TB test on Monday, August 24, 2020." *Id.* at 5.  Following investigation, Nivens's allegations were determined to be "non-meritorious" because DPSCS protocol was followed. *Id.* at 11.

Specifically, with respect to exhaustion, the State Defendants note that ARP was filed on August 10, 2023.  ECF 36-1 at 12; ECF 36-7 at 4.  The State Defendants argue: "The Warden's response to Plaintiff's ARP grievance was due September 9, 2023."  ECF 36-1 at 12.  However, as the State Defendants note, Nivens's Complaint is dated August 14, 2024, and was docketed in this Court on August 21, 2023.  *See* ECF 1.  The Warden dismissed Nivens's ARP one day after this case was docketed, on August 22, 2023.  ECF 36-7 at 2.  Thus, the State Defendants assert that, "[e]ven construing the initiation of this action liberally in the light most favorable to Plaintiff, Plaintiff's Complaint was still filed prematurely."  ECF 36-1 at 12.

Based on the forgoing facts, the State Defendants argue:  (1) the Eleventh Amendment bars suit against them in their official capacities (ECF 36-1 at 9); (2) Nivens has failed to properly exhaust his administrative remedies and is thus barred from bringing this suit (*id.* at 10); (3) Nivens has failed to allege personal participation or supervisory liability on the part of the State Defendants (*id.* at 13); (4) there was no constitutionally defective failure to provide adequate medical care (*id.* at 15); and (5) the State Defendants are entitled to qualified immunity (*id.* at 17).

## C. Opposition Responses

Nivens opposes the Motion.  ECF 42 (the "Opposition").  Nivens's Opposition is dated April 5, 2024, and was received by the Court on April 15, 2024.  *Id.* at 1, 15.

At the outset, the court notes that Nivens repeatedly references his filing of a "Declaration pursuant to Fed. R. Civ. P. 56(d) on Monday, October 9, 2023, prior to [counsel for the State Defendants] entering her appearance."  *Id.* at 1-2.  However, the Docket does not reflect any

such filing on or about October 9, 2023, or any time prior to counsel's entry of appearance on January 23, 2024.

Nivens contends that his claims are exhausted.  *Id.* at 4.  He indicates that the Warden "has 5 days to issue a receipt and response but FAILED to do both" and thus "Nivens filed appeals with both the Commissioner's Office and the Inmate Grievance Office."  *Id.* at 4.  He "then appealed to the Howard County Circuit Court," which "issued a Notice to Administrative Agency of Judicial Review on Wednesday, January 10, 2024."  *Id.*  A hearing was scheduled for May 9, 2024.  *Id.*

The State Defendants replied to Nivens's Opposition.  ECF 47.  Specifically, they note that Nivens "does not dispute" the dates of the filing of his ARP, his lawsuit, the warden's response, or when he received that response.  *Id.* at 3.  Moreover, they contend that Nivens incorrectly claims that the Warden was required to respond to him "within 5 days."  *Id.*  The State Defendants observe that Nivens "provides no legal authority to support his contention that the Warden's decision was due less than 30 days after [his] ARP grievance was filed," nor does he provide any "legal authority to support his contention that [he] properly exhausted the administrative remedies available to him prior to filing suit in this Court."  *Id.*  In their view, Nivens's submission actually supports their argument that his claims are unexhausted by "stating [that he] initiated multiple appeals after the initiation of this case."  *Id.*

Nivens again responded in opposition.  ECF 48.  Again, he argues that his claims were properly exhausted, stating: "Nivens' administrative and State remedies were subsequently exhausted and therefore none remained available for Nivens if his case is dismissed, so a dismissal would be improper because the Warden as a 'prison official' failed to respond to Nivens' ARP complaint grievance in a timely manner."  *Id.* at 2.  Moreover, he again maintains that the Warden's

response was due within five days and cites "DOC.185.0002 to DOC.185.0004 and COMAR Regulations." *Id.* at 3.[8]

## II.     Standard of Review

### A.

Nivens is self-represented.   Therefore, his submissions are liberally construed.   *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice"); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *accord Quintero v. Garland*, 998 F.3d 612, 634 (4th Cir. 2021); *Bala v. Cmm'w of Va. Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013) (per curiam).  But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'"   *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

### B.

The State Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  *See* ECF 36.  A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).  The Fourth Circuit has articulated two requirements for

---

[8] Nivens indicates that these regulations are included as "Attachment L."  ECF 48 at 3. But, the attachment does not reference these provisions.  *See* ECF 48-1.

proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. *See Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor of Baltimore,* 721 F.3d 264, 281 (4th Cir. 2013).

As noted, a court ordinarily "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.,* 510 F.3d 442, 450 (4th Cir. 2007). But, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland,* 672 F. App'x 220, 222 (4th Cir. Nov. 29, 2016) (per curiam).

A court may not convert a motion to dismiss to one for summary judgment sua sponte, unless it gives notice to the parties that it will do so. *See Laughlin v. Metro Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.,* 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Adams Housing, LLC*, 672 F. App'x at 622 ("The court must give notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'") (citation omitted). However, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's

consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin,* 149 F.3d at 261.

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). But, this discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165-67.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc*., 637 F.3d 435, 448-49 (4th Cir. 2012); *see Putney v. Likin*, 656 F. App'x 632, 638-39 (4th Cir. July 14, 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). But, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv*. *Co*., 80 F.3d 954, 961 (4th Cir. 1996)).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit

requirement of former Rule 56(f)). "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC,* 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted), *rev'd on other grounds sub nom. Gardner v. Ally Fin., Inc.*, 514 Fed. App'x 378 (4th Cir. 2013) (per curiam).   A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll*., 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted).   But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature.   And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an

adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Harrods*, 302 F.3d at 244 (internal citations omitted).

According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). "This is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 F. App'x at 638.

Although Nivens repeatedly referenced his affidavit pursuant to Rule 56(d) (*see* ECF 42 at 1, ECF 48 at 1), the Court could not locate any such affidavit in the record. In any event, Nivens has not, in any of his responses, explained how discovery would aid in resolution of this case, or why discovery is necessary for him to address the State Defendants' arguments. Indeed, Nivens has repeatedly and thoroughly responded to the defense arguments through his submissions.

I am satisfied that it is appropriate to address the Motion as one for summary judgment, because this will facilitate resolution of this case. Even under Rule 12(b)(6), however, I may consider the ARP and the documents pertaining to it. I explain below.

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). In other words, "[a]t the pleadings stage, courts are limited to considering the four corners of the complaint and the documents attached or incorporated thereto." *Guerrero v. Ollie's Bargain*

13

*Outlet, Inc.*, 115 F.4th 349, 356 (2024); *see Pendleton v. Jividen*, 96 F.4th 652, 656 (4th Cir. 2024) (recognizing that parties may incorporate documents into a complaint by reference); *Goines v. Valley Community Services Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits"); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed v. Town of Gilbert*, 576 U.S. 155 (2015); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004).

Even if a plaintiff has referenced a document, that does not guarantee consideration of it on a motion to dismiss. "[B]efore treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167. Notably, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.* Conversely, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Id.*

Under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may "consider a document submitted by the movant that [is] not attached to or

expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166; *see also Doriety for Estate of Crenshaw v. Sletten*, 109 F.4th 670, 679 (2024); *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017); *Kensington Volunteer Fire Dep't v. Montgomery Cnty.*, 684 F.3d 462, 467 (4th Cir. 2012).

For a document to be integral, a "plaintiff's claims must turn on, or otherwise be based on, the contents of the document." *Brentzel v. Fairfax Transfer & Storage, Inc.*, 2021 WL 6138286, at *2 (4th. Cir. Dec. 29, 2021) (per curiam) (citing *Goines*, 822 F.3d at 166). Further, to be "integral," a document must be one "that by its 'very existence, and *not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (emphasis in original) (citation omitted); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). "As examples, 'courts have found integral the allegedly fraudulent document in a fraud action, the allegedly libelous magazine article in a libel action, and the documents that constitute the core of the parties' contractual relationship in a breach of contract dispute.'" *Chesapeake Bay Found., Inc.*, 794 F. Supp. 2d at 611 n.4 (quoting *Fisher v. Md. Dep't of Pub. Safety & Corr. Servs.*, JFM-10-0206, 2010 WL 2732334, at *2 (D. Md. July 8, 2010)).

In addition, even in the context of Rule 12(b)(6), "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, under Fed. R. Evid. 201, a court may take judicial notice of

adjudicative facts only if they are "not subject to reasonable dispute," in that they are (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. This includes taking judicial notice of documents from state court proceedings and other matters of public record, without converting the motion to one for summary judgment. *Parikh v. Frosh*, PX-22-110, 2023 WL 131043, at *5 (D. Md. Jan. 9, 2023), *aff'd in part, rev'd in part on other grounds*, *Parikh v. Brown*, 2024 WL 2764720 (4th Cir. May 30, 2024) (per curiam); *Brown v. Ocwen Loan Servicing, LLC*, PJM-14-3454, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015), *aff'd*, 639 F. App'x 200 (4th Cir. 2016); *Green v. Wells Fargo Bank, N.A.*, 927 F. Supp. 2d 244, 246 n.2 (D. Md. 2013); *cf. Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990) (concluding that a district court may "properly take judicial notice of its own records").

It is clear that, in his suit, plaintiff alleges that he filed his ARP in August 2023. ECF 6 at 8-9. He also includes as an exhibit the notice he received from the Warden, denying his claim. *See* ECF 6-2. Thus, the ARP is integral to the suit. Therefore, even in the context of Rule 12(b)(6), I may consider the ARP.

### III.   Discussion

As noted, the State Defendants advance several grounds to support the Motion. In particular, they claim: (1) suit is barred by the Eleventh Amendment; (2) Nivens failed to exhaust administrative remedies; (3) Nivens has failed to allege personal participation required for direct liability, nor has he pleaded facts that would support supervisory liability; (4) Nivens was not provided constitutionally defective medical care; and (5) the State Defendants are entitled to qualified immunity. ECF 36-1.

I conclude that Nivens has failed to exhaust his administrative remedies.  Therefore, I need not address the merits of the State Defendants' additional arguments.

### A.  Exhaustion of Administrative Remedies

The Prisoner Litigation Reform Act ("PLRA") requires a prisoner to exhaust all "available administrative remedies before bringing a § 1983 action.  *See Johnson v. Robinette*, 105 F.4th 99, 108 (4th Cir. 2024); *Younger v. Crowder*, 79 F.4th 373, 377 (4th Cir. 2023); *Williams v. Carvajal*, 63 F.4th 279, 285 (4th Cir. 2023).  The PLRA provides, in pertinent part, 42 U.S.C. § 1997e(a):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  42 U.S.C. § 1997e(h).  The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).

The doctrine governing exhaustion of administrative remedies has been well established through administrative law jurisprudence.  It provides that a plaintiff is not entitled to judicial relief until the prescribed administrative remedies have been exhausted.  *Woodford v. Ngo*, 548 U.S. 81, 88 (2006).  Therefore, a claim that has not been exhausted may not be considered by this Court.  *See Jones v. Bock*, 549 U.S. 199, 220 (2007).  In other words, exhaustion is mandatory, and a court ordinarily may not excuse a failure to exhaust.  *Ross v. Blake*, 578 U.S. 632, 639 (2016) (citing

*Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

However, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Bock*, 549 U.S. at 215-216; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

The PLRA's exhaustion requirement serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Bock*, 549 U.S. at 219; *see Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (recognizing that exhaustion provides prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). It is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process so that the agency reaches a decision on the merits. *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *Chase*, 286 F. Supp. at 530; *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must

follow all administrative steps to meet the exhaustion requirement so that the agency addresses the merits of the claim, but need not seek judicial review), *cert. denied*, 537 U.S. 949 (2002).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford*, 548 U.S. at 88. This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Id.* at 91 (quoting *Pozo*, 286 F.3d at 1024) (emphasis in original). But, the Court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Notably, an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a); *Younger*, 79 F.4th at 375. As explained in *Younger*, "[f]or an administrative remedy to qualify as 'available,' it must be able to provide some type of relief." *Id.* at 380 (citing *Ross*, 578 U.S. at 642). And, "even if a remedy is technically on the books, it is not 'available' if 'it operates as a dead end' or 'if it is so opaque that it becomes, practically speaking, incapable of use.'" *Younger*, 79 F.4th at 380 (quoting *Ross*, 578 U.S. at 643–44).

Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him are no longer available. *See Woodford*, 548 U.S. 89. Therefore, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that

prison officials have been given an opportunity to address the claims administratively. *Id.* at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

In *Ross*, 578 U.S. at 635, the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." In particular, it rejected a "special circumstances" exception to the exhaustion requirement. *Id.* at 637. But, it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id.* at 635-36. And, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725.

The *Ross* Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." *Ross*, 578 U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 643-44. The third circumstance is when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

Maryland has an established "administrative remedy procedure" for use by Maryland State prisoners for "inmate complaint resolution." *See generally* Md. Code (2017 Repl. Vol., 2023 Supp.), §§ 10-201 *et seq.* of the Correctional Services Article ("C.S."); Code of Maryland Regulations ("COMAR") § 12.02.28.02B(1) (defining ARP); *see also Younger*, 79 F.4th at 379.

The grievance procedure applies to the submission of a "grievance against an official or employee of the Division of Correction ["DOC"]. . . ."  C.S. § 10-206(a).

In particular, Maryland has created a "three-step process for reviewing inmate grievances." *Younger*, 79 F.4th at 379; *see* COMAR §§ 12.02.28.02; 12.02.28.05; 12.02.28.09.  Regulations promulgated by the DPSCS concerning the administrative remedy procedure define a "grievance" to include a "complaint of any individual in the custody of the [DOC] . . . against any officials or employees of the [DOC] . . . arising from the circumstances of custody or confinement."  COMAR § 12.07.01.01(B)(8).

> *Younger* explained, 79 F.4th at 379–80 (emphasis added):
>
> The first two steps of the process are known as the Administrative Remedy Procedure.[] An inmate initiates the Administrative Remedy Procedure by filing a request for administrative remedy with the warden. Md. Code Regs. §§ 12.02.28.05, 12.02.28.09, 12.02.28.02(A)(14). Assuming the complaint is neither frivolous nor procedurally deficient, **the inmate is entitled to a response within 30 days.** *See* §§ 12.02.28.10, 12.02.28.12. If the inmate is unsatisfied with the response or the remedy provided, he may appeal to the Commissioner of Corrections [sic]. § 12.02.28.05(D)(2). Appeal to the Commissioner ends the Administrative Remedy Procedure. If the Commissioner denies the appeal, the inmate can proceed to the third and final step of the process and appeal to the Inmate Grievance Office. § 12.07.01.05(B).

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the Inmate Grievance Office ("IGO") against any official or employee of the DOC.  C.S. § 10-206(a).  But, when the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the IGO.  And, if the prison has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process before filing a grievance with the IGO.  *See* C.S. § 10-206(b).

As discussed, the ARP process consists of multiple steps.  For the first step, a prisoner is required to file his initial ARP with his facility's "managing official," COMAR § 12.02.28.05,

which is defined by COMAR § 12.02.28.02(B)(14) as "the warden or other individual responsible for management of a correctional facility" and defined under C.S. § 1-101(m) as "the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility."  Moreover, the ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later.  COMAR § 12.02.28.09(B).  The response from the managing official is due to the inmate within "30 calendar days of the date the inmate filed a formal complaint using the ARP."  COMAR § 12.02.28.12.H(3)(a).

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame.  The prisoner has 30 days to file an appeal to the Commissioner of Correction.  COMAR 12.02.28.14(B)(5).

If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO.  COMAR § 12.02.28.18; C.S. § 10-206(a); COMAR § 12.07.01.05(B).[9] When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response.  COMAR § 12.07.01.04(B)(9)(a).

If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it "without a hearing …"  C.S. § 10-207(b)(1); *see also* COMAR § 12.07.01.06(B).  An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial

---

[9] If the Commissioner fails to respond, the grievant shall file an appeal within 30 days of the date the response was due.  COMAR § 12.07.01.05(B)(2).

review.  C.S. § 10-207(b)(2)(ii).  However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings.  *See* C.S. § 10-208; COMAR § 12.07.01.07-.08.  The conduct of such hearings is governed by statute.  *See* C.S. § 10-208; COMAR § 12.07.01.07(D); *see also* Md. Code § 10-206(a)(1) of the State Government Article.

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination.  C.S. § 10-209(b)(1)(ii); COMAR § 12.07.01.10(A)(2).  However, if the ALJ concludes that the inmate's complaint is wholly or partly meritorious, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge.  *See* C.S. § 10-209(b)(2),(c); COMAR § 12.07.01.10(B).

The statute provides for judicial review.  C.S. § 10-210.  But, "[a] court may not consider an individual's grievance that is within the jurisdiction of the [Inmate Grievance] Office or the Office of Administrative Hearings unless the individual has exhausted the remedies provided" in Title 10, Subtitle 2 of the Correctional Services Article.  C.S. § 10-210(a).

The State Defendants assert that Nivens's claim is unexhausted because Nivens filed  suit before completing the first step of the grievance process.  The record reflects, and Nivens does not dispute, that he wrote his ARP on August 7, 2023; he submitted it to his tier officer on August 8, 2023; and the Warden received the ARP on August 10, 2023.  ECF 6 at 8-9; ECF 36-7 at 4; ECF 42 at 4.  The Warden's response was due 30 days later, on or before September 9, 2023.  ECF 36-7 at 4; *see also* COMAR §§ 12.02.28.10, 12.02.28.12.

Nivens did not await the Warden's response to his ARP.  His lawsuit is dated August 14, 2024, and the Complaint was received and docketed in this court on August 21, 2023.  *See* ECF

1.[10]  The Warden dismissed Nivens's ARP on August 22, 2023, one day after the case was docketed.  ECF 36-7 at 2.  Thus, even construing the initiation of this action liberally, and in the light most favorable to Nivens, it is abundantly clear that his Complaint was filed prematurely, because it was filed before plaintiff exhausted his administrative remedies.

Nivens is mistaken in his belief that the Warden had only five days to respond to his ARP, as this assertion is belied by the applicable law.  Because Nivens's claims are unexhausted, the State Defendants are entitled to dismissal of the case, without prejudice.

### IV.    Other Pending Motions

Four additional motions are pending.  Three motions, a Motion to Strike (ECF 58), a Motion to Vacate Entry of Default (ECF 62), and a motion to depose Nivens (ECF 64), were filed by the YesCare Defendants.  Nivens filed a "Motion to Grant and Award Plaintiff's § 1983 Civil Complaint and Dismiss Defendants Claims…"  ECF 65 ("Motion to Grant").  I shall address each, in turn.

### A.  Motion to Strike

The YesCare Defendants filed a Motion to Strike (ECF 58) the "Line" filed by Nivens (ECF 57).  The Line is supported by exhibits.  ECF 57-1, ECF 57-2. Specifically, the defendants argue that Nivens's filing largely reiterates arguments that have been presented in prior pleadings. ECF 58.  Because the Line is "redundant and immaterial" and "merely repeats previous pleadings and does not contribute to the resolution of this case," the YesCare Defendants ask the Court to use its authority under Rule 12(f) of the Federal Rules of Civil Procedure to strike the filing.  *Id.*

---

[10] A document of a prisoner is considered filed when it is given to a prison official for mailing, not when it reaches the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988); *Lewis v. Richmond Police Department*, 947 F.2d 733, 734-35 (4th Cir. 1991); *United States v. Dorsey*, 988 F. Supp. 917, 919-920 (D. Md. 1998).

I agree that, in large part, the Line repeats information that has previously been presented by plaintiff in other filings.  The Line also adds extraneous information regarding a change in health care prison healthcare providers in Maryland.  *Id.*  Nivens includes an article from the Maryland periodical, "The Daily Record," about the change in health care providers, and issues created in the prison health care system prior to the change in service providers.  ECF 57-1.  He also includes what appears to be a menu.  ECF 57-2.

Fed. R. Civ. P. 12(f) governs motions to strike.  Rule 12(f) provides, in part: "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *See, e.g., Haley Paint Co. v. E.I. du Pont de Nemours & Co.*, 279 F.R.D. 331, 335 (D. Md. 2012).  In determining whether to grant a motion to strike, the court "enjoys wide discretion ... in order to minimize delay, prejudice and confusion by narrowing the issues for discovery and trial." *Id.* at 336.

"Rule 12(f) motions are generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (internal quotation marks omitted); *see also Renaissance Greeting Cards, Inc. v. Dollar Tree Stores*, 227 Fed. Appx. 239, 247 (4th Cir. 2007).  Therefore, "[w]hen reviewing a motion to strike, 'the court must view the pleading under attack in a light most favorable to the pleader.'" *Piontek v. Serv. Ctrs. Corp.*, PJM 10–1202, 2010 WL 4449419, at *8–9 (D. Md. Nov. 5, 2010) (citation omitted).

Rule 12(f) motions ordinarily "will be denied unless the matter under challenge has 'no possible relation to the controversy and may prejudice the other party.'" *U.S. ex rel. Ackley v. Int'l Bus. Machines Corp.*, 110 F. Supp. 2d 395, 406 (D. Md. 2000) (quoting *Steuart Inv. Co. v. Bauer Dredging Constr. Co.*, 323 F. Supp. 907, 909 (D. Md. 1971)); *accord Williams v. Kettler Mgmt.*

*Inc.*, CCB–12–1226, 2014 WL 509474 (D. Md. Feb. 5, 2014); *E.E.O.C. v. Spoa, LLC*, CCB–13–1615, 2014 WL 47337 (D. Md. Jan. 3, 2014).

Although much of the information contained in the Line at issue is redundant, I shall deny the Motion to Strike.  Nivens is a self-represented litigant, and as such his filings are liberally construed.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Although the YesCare Defendants state that the information is redundant, they have provided no additional argument supporting the Motion to Strike.  Thus, the Court sees no compelling reason to strike the Line.  The YesCare Defendants are free to argue the relevance of the information as this litigation progresses.

### B.  Motion to Vacate Entry of Default

The YesCare Defendants move to vacate the entry of default against them.  ECF 62.  The entry of default and default judgments are governed by Fed. R. Civ. P. 55, which entails two distinct steps. The first step is the Clerk's entry of default, which is governed by Fed. R. Civ. P. 55(a). It provides: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." The second step is the entry of default judgment. When, as here, the claim is not for a sum certain, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). Rule 55(c) is also pertinent. It provides: "The court may set aside an entry of default for good cause...."

The Court of Appeals for the Fourth Circuit has long expressed a "strong policy that cases be decided on their merits." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993); *see also Rangarajan v. Johns Hopkins Univ.*, 917 F.3d 218, 229 (4th Cir. 2019), *cert. denied*, 139 S. Ct. 2762 (2019); *Projects Mgmt. Co. v. Dyncorp Int'l LLC*, 734 F.3d 366, 376 (4th Cir. 2013); *Tazco, Inc. v. Director, Office of Workers' Compensation Program*, 895 F.2d 949, 950 (4th Cir.

1990); *Herbert v. Saffell*, 877 F.2d 267, 269 (4th Cir. 1989). Indeed, the Fourth Circuit has cautioned that because "dismissal without deciding the merits is the most extreme sanction, a court must ... exercise its inherent power to dismiss with restraint ...." *Shaffer Equipment*, 11 F.3d at 462. To that end, "'an extensive line of decisions' has held that Federal Rule of Civil Procedure 55(c) must be 'liberally construed in order to provide relief from the onerous consequences of defaults and default judgments.'" *Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 954 (4th Cir. 1987) (quoting *Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969)).

To be sure, although there is a strong policy in favor of deciding cases on the merits, that policy is not absolute. "[D]efault judgment 'is appropriate when the adversary process has been halted because of an essentially unresponsive party.'" *Entrepreneur Media, Inc. v. JMD Entertainment Group, LLC*, 958 F.Supp.2d 588, 593 (D. Md. 2013) (quoting *S.E.C. v. Lawbaugh*, 359 F.Supp.2d 418, 421 (D. Md. 2005)); *see Garnier-Thiebault, Inc. v. Castello 1935 Inc.*, SDT-17-3632, 2019 WL 6696694, at *1 (D. Md. Dec. 6, 2019) (Thacker, J., sitting by designation) (quoting *Int'l Painters & Allied Trades Indus. Pension Fund v. Cap. Restoration & Painting Co.*, 919 F. Supp. 2d 680, 684 (D. Md. 2013)).

The Fourth Circuit has articulated several factors for courts to review in deciding whether to set aside an entry of default. *See Colleton Preparatory Academy v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010); *see also Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 203 (4th Cir. 2006); Fed.R.Civ.P. 55(c). "[A] district court should consider whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic." *Colleton*, 616 F3d at 417 (quoting *Payne*, 439 F.3d at 204-05).

The first factor requires the court to consider whether the defendant has presented a "meritorious defense." *Colleton*, 616 F.3d at 417; *see also Wainwright's Vacations, LLC v. Pan American Airways Corp.*, 130 F.Supp.2d 712, 718 (D. Md. 2001). "All that is necessary to establish the existence of a meritorious defense is a presentation or proffer of evidence, which, if believed, would permit the court to find for the defaulting party." *Armor v. Michelin Tire Corp.*, 113 F.3d 1231 at *2 (4th Cir. 1997); *see United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982). "'The underlying concern is ... whether there is some possibility that the outcome ... after a full trial will be contrary to the result achieved by the default.'" *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988) (alterations in original) (quoting 10 Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. Civ. § 2697, at 531 (2d ed. 1983)).

The YesCare Defendants argue that they have a meritorious defense, and they argue that Nivens has failed to state a claim against them for deliberate indifference or for discrimination. ECF 62 at 7. According to the defendants, "[i]t is clear from the allegations in the complaint and Nivens' medical records that the individual YesCare providers were not deliberately indifferent to Nivens' medical needs." *Id.* at 8. Further, they contend that "there is ample evidence that the individual YesCare providers responded to Nivens' medical needs" and "Nivens admits in the complaint that he was advised of a policy requiring screening questionnaires to be provided in lieu of proving TB reactive tests." *Id.* The defense's assertion, if proven, would constitute a meritorious defense. Thus, this factor counsels in favor of vacating the entry of default.

Next, "'a party attempting to set aside an entry of default must act with reasonable promptness in responding to the entry of default ....'" *Wainwright's Vacations, LLC*, 130 F. Supp. 2d at 718 (internal citations omitted). Because Rule 55(c) does not provide a specific time frame

for filing a motion to vacate, this question must be viewed "in light of the facts and circumstances of each occasion." *Moradi*, 673 F.2d at 727.  On July 26, 2024, I afforded the YesCare Defendants twenty-eight days from the date of my Order to move to vacate the entry of default. ECF 52.  They complied, filing their Motion to Vacate on August 22, 2024.  ECF 62.  Thus, this factor weighs in favor of vacating the entry of default.

The third factor pertains to whether the defaulting party was personally responsible for the default and the fifth factor considers whether there is a "history of dilatory action." *Colleton*, 616 F.3d at 417.  Nivens filed a document that I construed as a motion for entry of default against the YesCare Defendants because their counsel failed to timely answer and comply with the Court's instruction to file a motion for summary judgment or, alternatively, a status report regarding the need for discovery.  ECF 50, ECF 51, ECF 52.  Counsel argues: "The sheer volume and complexity of Mr. Nivens' filings have made it difficult for defense counsel to adequately respond to each one." ECF 62.  Further, defendants "acknowledge that [they] did not respond to the Court's initial order in a timely manner; however, this was an isolated lapse," and they "have since made diligent efforts to comply with the Court's directives, including filing [an] Answer and addressing the numerous filings submitted by the Plaintiff by moving to strike duplicative filings."  *Id.*  I am persuaded that the conduct was an isolated lapse on the part of counsel for the YesCare Defendants. This weighs in favor of vacating the entry of default.

The fourth factor pertains to the prejudice that the non-defaulting party will suffer. *See Colleton*, 616 F.3d at 417. Nivens did not directly respond to the Motion to Vacate the Entry of Default.  However, his lone filing since the YesCare Defendants moved to vacate the entry of default does address the entry of default.  *See* ECF 65 at 1-2.  As to prejudice, Nivens asserts, without support, that he "has been PREJUDICED by the Medical Defendants through their counsel

MTM's deliberate, intentional, knowing and willful attempts of stalling and DELAYING THE ADVERSARY PROCESS." *Id.* at 2 (emphasis in original). But, there is no indication that Nivens has suffered any prejudice due to the modest delays attributable to the YesCare Defendants. This factor counsels in favor of vacating the entry of default.

Finally, the Court must also consider whether there are less drastic sanctions available to cure any prejudice. *Colleton*, 616 F.3d at 417. Having determined no additional prejudice flows from the delays which led to the entry of default, no additional sanctions are needed. The YesCare Defendants have now answered the Complaint (ECF 27), provided the status updated requested by the Court, in which they indicate the need for discovery (ECF 63), and they have filed a Motion to Depose Nivens (ECF 64).

Default is highly disfavored and reserved for those cases where an unresponsive party has halted the adversary process. *See Colleton*, 616 F.3d at 417. As the adversary process is now proceeding, and for the reasons articulated above, I find it appropriate to vacate the entries of Default against the YesCare Defendants. Thus, the Motion to Vacate (ECF 62) is granted.

### C. Motion to Depose Nivens

The YesCare Defendants have moved to depose Nivens. ECF 64. They assert, *id.* at 2: "It is necessary for the Defendants to take his deposition because he is the plaintiff and has knowledge of alleged facts relating to the issues in this litigation, and his claimed injuries."

Rule 30 of the Federal Rules of Civil Procedure provides that a party "must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(1) and (2) if the deponent is confined in prison." Fed. R. Civ. P. 30(a)(2)(B). Rule 26(b)(1) provides that "parties may obtain discovery regarding any nonpriviledged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). For this, the Court

considers "the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Rule 26(b)(2) then limits this broad scope of discovery, providing that "the court must limit the frequency or extent of discovery [ ] if it determines that: the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). "Courts have broad discretion in [their] resolution of discovery problems arising in cases before" them. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs.*, 334 F.3d 390, 402 (4th Cir. 2003).

Despite an opportunity to file dispositive motions for my consideration (ECF 46), the YesCare Defendants have answered the Complaint (ECF 27) and have repeatedly reiterated the need for discovery in this matter. ECF 63, ECF 64. As such, I shall grant the YesCare Defendants' Motion to Depose Nivens (ECF 64).

However, I recognize that Nivens proceeds pro se, and navigating the process of discovery and undergoing a deposition would place an undue burden on plaintiff's ability to litigate his case. Under 28 U.S.C. § 1915(e)(1), a court has discretion to appoint counsel for indigent civil litigants in exceptional circumstances. *See Bailey-El v. Hous. Auth. of Balt. City*, 185 F. Supp. 3d 661, 670 (D. Md. 2016) (citing *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975), *aff'd in part, vacated on other grounds,* 686 F. App'x 228 (4th Cir. 2017). Whether exceptional circumstances exist is a fact-specific determination. *See Whisenant v. Yaum*, 739 F.2d 160, 163 (4th Cir. 1984)*, abrogated on other grounds by Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989). Exceptional

circumstances exist where (1) "the plaintiff 'has a colorable claim'" and (2) "considering the claim's objective complexity and the plaintiff's subjective abilities, . . . the plaintiff 'lacks the capacity to present it.'"  *Jenkins v. Woodard*, 109 F.4th 242, 248 (4th Cir. 2024) (quoting *Whisenant*, 739 at 162).

In *Jenkins*, the Fourth Circuit recently emphasized that in determining whether exceptional circumstances warrant appointment of counsel to a civil litigant, a district court should consider a litigant's carceral status, educational background, legal understanding, mental illness, and ability to access both legal research materials and evidence, as well as whether the case depends on the competing credibility of witnesses, who the pro se litigant would have difficulty cross-examining without the aid of a lawyer.  *Id.* at 250.

In my view, exceptional circumstances justify the appointment of counsel on behalf of Nivens.  Plaintiff has diligently pursued his claim thus far, and undergoing a deposition and navigating discovery presents a compelling reason to appoint an attorney to assist him.  Thus, the YesCare Defendants' Motion to Depose Nivens will be granted, and I will appoint a member of the court's bar to represent Nivens through the pendency of this action.  Once counsel is appointed, all future filings should come only through Nivens's counsel.

### D.  Motion to Grant

Nivens filed a document titled "Motion to Grant and Award Plaintiff's § 1983 Civil Complaint."  ECF 65.  He argues that his Complaint should be granted due to the failure of the YesCare Defendants to respond to a court order.  *Id.*  Largely, this appears to be based on the missed deadlines that prompted the Clerk's entry of default.  As this issue was addressed above, and the entry of default will be vacated, I shall deny the Motion to grant, as moot.

**V.      Conclusion**

For the foregoing reasons, I shall grant the State Defendants' Motion (ECF 36).  I shall also deny the YesCare Defendants' Motion to Strike (ECF 58); I shall grant the YesCare Defendants' Motion to Vacate (ECF 62); and I shall grant the YesCare Defendants' Motion to Depose (ECF 64).  And, I shall deny, as moot, Nivens's Motion to Grant (ECF 65).  However, I shall appoint counsel to assist Nivens with this action.

A separate Order follows.


October 21, 2024                                                     /s/                                 
Date                                                        Ellen L. Hollander
                                                         United States District Judge

33